UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

FRANCES M. WOLF,

        Plaintiff,                              Case No. 15-cv-12530

v                                                           Honorable Thomas L. Ludington

CAUSLEY TRUCKING, INC, et al.,

        Defendants.

_____/

### ORDER DENYING MOTION TO REMAND AND GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

Randy Rieck was a former Vice President and Director of Maintenance at Defendant Causley Trucking, a business owned by Mr. Rieck's uncle, Defendant Gregory Causley. Compl. ¶¶ 10-11. Mr. Rieck passed away on August 7, 2014. *Id*. at ¶ 9. After his death, Mr. Rieck's surviving spouse, Plaintiff Frances Wolf, applied for benefits under Causley Trucking's Death Benefit Only Plan (the "Death Benefit Plan"). Wolf was awarded $206,405.39. Unsatisfied with the benefits determination, Wolf filed an appeal with Causley, who upheld his benefits determination. Wolf proceeded to file suit in Michigan state court, which was subsequently removed by Defendants to this Court on July 16, 2015, who alleged that Wolf's claims were preempted by the Employee Retirement Income Security Act ("ERISA"). Wolf then filed an amended complaint on August 13, 2015.

On August 31, 2015 Defendants moved to dismiss all but the first count of Wolf's amended complaint. Wolf then moved to remand the action to State Court on September 17, 2015. For the reasons stated below, Wolf's motion to remand will be denied, and Defendants' motion to dismiss will be granted in part and denied in part.

**I.**

According to the complaint, Causley Trucking established a Non-Qualified Salary Continuation Plan in order to provide retirement benefits to eligible management employees in 1988 (the "1988 Plan"). *Id*. at ¶ 12. Mr. Rieck was allegedly an eligible employee and participant of that plan. *Id*. Causley Trucking eventually purchased a life insurance policy on Mr. Rieck's life from the Minnesota Life Insurance Company, which it replaced with a policy from Principal Life Insurance Company on November 17, 2004. *Id*. at ¶¶ 13-14. The complaint contains no additional information about the policy, its terms, or funding.

On November 30, 2004, Causley Trucking adopted a resolution authorizing the Death Benefit Plan "to provide death benefits to the beneficiaries of the Corporation's eligible employees, if death occurs while the employee remains in the employment of the Corporation or has retired from employment after attaining age 65 with a minimum of 20 years of service." *Id*. at ¶¶ 15-17; Ex. A. The plan authorized Causley Trucking to purchase principal life insurance policies to fund the plan as follows:

> In order to assure that the Corporation will have sufficient assets to meet its obligation to pay the death benefits provided for under this Plan, the Corporation may wish to purchase life insurance policies from Principal National Life Insurance Company or Principal Life Insurance Company, Des Moines, Iowa. The Secretary shall, as directed by the Board of Directors, apply for insurance policies on the lives of Participants. The Corporation shall be designated as owner and the beneficiary of any such policies purchased and all rights and benefits accruing from such policies shall belong solely to the Corporation. The Participant shall have no rights or interest in such policies.

*Id*. at ¶ 18. Defendant Causley, the company's owner and president, was named as the Death Benefit Plan's fiduciary and plan administrator. *Id*. at ¶ 19.

Mr. Rieck entered into an agreement under the plan that same day. *Id* ¶ 20; Ex. B. Pursuant to the agreement, "[i]f a participant dies while employed by [Causley Trucking]… the

Corporation shall, beginning on the month following the Participant's death, make payments in the amount of no less than the cash value of the policy in equal installments over 10 years to the Participant's surviving spouse while living." Ex. B.

Wolf alleges that, prior to Mr. Rieck's death, Causley informed her that in the event of Mr. Rieck's death she would receive around $400,000. Compl. ¶ 22. After Mr. Rieck passed away on August 7, 2014, Causley allegedly told Wolf that she would receive $300,000. *Id*. at ¶ 23. After Wolf asked for information regarding how the benefits were calculated, Wolf met with Causley and representatives from the Principal. *Id*. at ¶ 24. At the meeting, Causley informed her that she would be paid death benefits in the amount of $350,000. *Id*. at ¶ 24.

Ultimately, Wolf received $206,405.39. *Id*. at ¶ 25. Pursuant to the Death Benefits Plan review procedure, on December 12, 2014 Wolf appealed the amount of the benefits she received by letter. *Id*. at 26. In that appeal, Wolf disputed Defendant Causley's determination of the "cash value of the policy." ECF No. 1, Ex. 1C. Specifically, Wolf argued the following:

> Without reference to a specific point in time, all that can be determined from the provision is that the Participant must be dead *before* the Corporation must "make payments in the amount of no less than the cash value of the policy." However, once the Participant is dead, the surrender value of the policy is zero and the only real "cash value of the policy" is the proceeds. Therefore, the "cash value of the policy" may reasonably be interpreted to mean the full death benefit amount of $1,059,496.00.

*Id.* In a letter dated April 9, 2015 Causley upheld his original benefits decision. *Id*. at ¶ 27; ECF No. 1, Ex. 1D. Causley responded to Wolf's argument as follows:

> The Plan Administrator, after reviewing the original claim determination, additional information provided on behalf of Ms. Wolf, and additional information the Plan Administrator obtained regarding the definition of "cash value," determined that the "cash value of the policy" for purposes of the Plan is the amount that Causley Trucking, Inc., as the owner of the policy, would have received if the policy had been surrendered on the date of Mr. Rieck's death.

>The Principal Life Insurance Company determined that the net amount Causley Trucking, Inc. would have received if the policy had been surrendered on August 7, 2014 was $181,693.93. The Plan Administrator determined that this is the minimum benefit payable to Ms. Wolf under the Plan. The Plan Administrator further determined that the Plan benefit actually payable to Ms. Wolf would be the amount Causley Trucking, Inc. would have received from the surrender of the policy on August 7, 2014 without reduction for surrender charges. That amount was $206,405.39.
>
>The Plan Administrator therefore determined that the Plan benefit payable to Ms. Wolf is $206,405.39, which is "no less than the cash value of the policy." The Plan Administrator also determined that Ms. Wolf is not entitled to the greater "face amount" or "death benefit" of the policy, which was $1,059,496.00 because the Plan terms do not require Causley Trucking, Inc. to pay Ms. Wolf any amount greater than $181,693.93.

*Id*.

Having exhausted her appeal under the Death Benefits Plan, Wolf filed suit in Michigan state court in the county of Saginaw. ECF No. 1. Ex. 1. Defendants removed Wolf's action to this court on July 16, 2015, arguing that Wolf's claims were preempted by ERISA. ECF No. 1. Wolf then filed an amended complaint on August 13, 2015, raising the following claims: (1) denial of benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B); (2) breach of fiduciary duty; (3) refusal to supply requested in formation under ERISA, 29 U.S.C. § 1132(c)(1); (4) common law estoppel; (5) breach of contract; and (6) conversion.

Defendants' motion to dismiss Counts II-VI of Wolf's amended complaint and Wolf's motion to remand the action to State Court are now ready for decision. Because this Court must determine whether it has jurisdiction over Wolf's claims before it can proceed to a review of the claims' merits, Wolf's motion to remand will be addressed first.

## II.

In order for a case to be removed, the federal court must have original jurisdiction to hear the controversy. *Id*. When a plaintiff's case is removed, he or she may file a motion to remand

the case to state court. 28 U.S.C. § 1447. A plaintiff seeking remand must establish that the federal court to which the action was removed lacks jurisdiction over the case and that jurisdiction properly lies with the state court whence the action came. *See id.* at §1447(c); *see also Int'l Tin Council v. Amalgamet Inc.*, 645 F. Supp. 879 (S.D.N.Y. 1986) (noting that a case must be remanded to the state court where it originated). If the federal court has proper jurisdiction, the case will not be remanded.

**A.**

Certain areas of federal law are so pervasive that they are considered to completely preempt all other state laws and regulations on that subject. *Sullivan v. Am. Airlines, Inc*., 424 F.3d 267, 272 (2d Cir. 2005) ("Under the complete-preemption doctrine, certain federal statutes are construed to have such 'extraordinary' preemptive force that state-law claims coming within the scope of the federal statute are transformed, for jurisdictional purposes, into federal claims— i.e., completely preempted."). Any case that calls for adjudication of a party's rights, duties, or obligations in one of these areas always presents a federal question, regardless of how the cause of action is pled in a plaintiff's complaint. *Id.* The Supreme Court has only found three statutes to have the requisite extraordinary preemptive force to support complete preemption, one of which is the ERISA's express preemption provision found at 29 U.S.C. § 1144.

Reflecting Congress's intent that ERISA comprehensively regulate employee pension and welfare plans, the express preemption provision provides that ERISA "shall supersede any and all [s]tate laws insofar as they may now or hereafter relate to any employee benefit plan …." 29 U.S.C. § 1144; *See also Metropolitan Life Ins. v. Massachusetts*, 471 U.S. 724 (1985). In order for such complete-preemption to apply, transforming a state-law claim into one arising under ERISA for purposes of its removal to federal court, the claim must fall within ERISA's

civil-enforcement provision of § 502(a)(1)(B). *Warner v. Ford Motor Co.*, 46 F.3d 531 (6th Cir. 1955). That provision provides, "[a] civil action may be brought . . . by a participant or beneficiary [in or of an ERISA plan] . . . to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). In other words, if a participant or beneficiary of an ERISA plan sues to recover benefits allegedly due to her under the terms of the ERISA plan or enforce her rights under the ERISA plan, the complete preemption doctrine applies and a defendant may remove the complaint from state court to federal court. *Rivet*, 522 U.S. at 475.

**B.**

Wolf argues that complete preemption does not apply in this case because the Plan is not an employee welfare benefit plan within the meaning of ERISA. ERISA defines "employee welfare benefit plan" in relevant part as follows:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer… to the extent that such plan, fund, or program is maintained for the purpose of providing its participants or their beneficiaries, through the purchase of insurance or otherwise… benefits in the event of sickness, accident, disability, death or unemployment…"

29 U.S.C. § 1002(1). In order to determine whether a plan is a employee welfare benefit plan within the meaning of ERISA, courts in the Sixth Circuit apply the four part test first adopted by the Eleventh Circuit in *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir. 1982) (*en banc*). *See Williams v. WCI Steel Co., Inc.*, 170 F.3d 598, 602 (6th Cir. 1999). Under the *Dillingham* test, an ERSA plan exists "if a reasonable person can ascertain (1) the intended benefits, (2) the class of beneficiaries, (3) the source of financing, and (4) the procedures for receiving benefits." *Williams*, 170 F.3d at 602.

Wolf argues that the first factor of *Dillingham* has not been met. She argues that because the benefits are defined as "no less than the cash value of the policy", a reasonable person cannot ascertain the intended benefits. In support of her position, she emphasizes *Williams*, 170 F.3d at 602 and *Siemon v. AT&T Corp.*, 117 F.3d 1173 (10th Cir. 1997).

At issue in *Williams* was a memorandum agreement providing funding or certain benefits to employees "in the event that WCI, a new company with no historic labor record, shut down the facility and was unable to pay liabilities to the union and its members." *Williams*, 170 F.3d at 601. The memorandum agreement called for the creation of a security enhancement trust funded by WCI in the amount of $21 million to be used to "provide employee and/or retiree benefits for Recipient Employees" in the event that the facility did not close within seven years. *Id*. The Sixth Circuit rejected the plaintiff's argument that the benefits were ascertainable. *Id*. at 602. Instead, the Sixth Circuit found that a reasonable person could not determine the amount or nature of the amorphous benefits. *Id*. at 603. The court found it problematic that "the district court would have to fashion essentially all of the details of the purported plan and determine exactly what benefits would go to which employees or retirees, since no one can ascertain what WCI intended to provide for its workers." *Id*. Because the memorandum agreement did not meet the *Dillingham* test, the Sixth Circuit concluded that it was not an employee benefit plan under ERISA. *Id*. at 604.

At issue in *Siemon* was AT&T's "Other Benefit payment scheme", which allowed employees who had demonstrated severe financial need and hardship to request benefits. *Siemon*, 117 F.3d at 1174. The AT&T benefit claim and appeal committee then had authority, at its discretion, to authorize payments or loans up to $1,000. *Id*. The plaintiff, Siemon, applied for and was denied Other Benefits payments on the grounds that Siemon had not demonstrated that

he had pursued other alternatives and that he had not made sufficient efforts to reduce his expenses. *Id*. The Tenth Circuit rejected Siemon's claim that the Other Benefits payment scheme constituted an employee welfare benefit plan under ERISA. The Court determined that a reasonable person could not ascertain the intended benefits under the first prong of *Dillingham* because the benefits were too "ephemeral and contingent" to determine what, if anything, employees were intended to receive. *Id*. at 1179. The Court noted that there was "no statement of any entitlement by an employee to any benefit whatsoever, much less a level of benefit. No particular event or status triggers entitlement to the benefit." *Id*. Likening the plan to a "good Samaritan project with a $1,000 limit", the Court concluded that "the mere right to apply for a payment that is totally discretionary is not itself a 'benefit' as contemplated by ERISA." *Id*.

Defendants contest Wolf's claim, arguing that the term "cash value of the policy" provides an ascertainable intended benefit. In support of their position, Defendants point the Court to *Colarusso v. Transcapital Fiscal Systems, Inc.*, 227 F.Supp. 2d 243 (D.N.J. 2002). In *Colarusso*¸ the district court was faced with a hybrid employee welfare benefit plan/employee pension plan. Pursuant to the plan, the defendant was to purchase insurance policies on select employees' lives in the face amount of $950,000.00. *Id.* at 247. The defendant would own the policy, while the employees were to own the cash value of the program. *Id*. The defendant was to pay the annual premium amount of $10,000.00 by deducting $5,000.00 per year from each employee's salary and then paying a matching contribution. *Id*. After ten years, the premiums would stop and the policy would be owned entirely by the employees. However, if an employee died during the ten year period, then the employer would be entitled to the death benefit and the employer's beneficiaries would be entitled to the remaining cash value of the policy. *Id*. In addressing the question of whether the plan had ascertainable benefits under *Dillingham*, the

court found that "a reasonable person could conclude that the intended benefits of the Plan were deferred income or death benefits". *Id*. Considering "all of the surrounding facts and circumstances from the point of view of a reasonable person," the court concluded that the plan constituted an employee benefit plan within the meaning of ERISA.

Defendants are correct in their assertion that the Plan provides ascertainable benefits more akin to *Colarusso* than to *Williams* or *Seimon*. Unlike in *Seimon*, the Death Benefits Plan is not ephemeral, contingent, or wholly discretionary. Instead, like in *Colarusso*, the Plan was an ongoing, non-contingent plan established to pay death benefits in the amount of at least the minimum cash value of the policy. Unlike in *Williams*, the Death Benefits Plan is not an amorphous grant of benefits to employees in general. Because the Death Benefits Plan establishes both the nature of the benefits (death benefits) and the amount of the benefits (at least the cash value of the policy), there is no danger that this Court would need to fashion any details of the plan or determine what benefits would go to which employees or retirees. Instead, in contrast to *Williams*, the Death Benefits Plan provides definite death benefits to specific employees. Because a reasonable person can ascertain the intended benefits, the Death Benefits Plan is an employee benefit plan within the meaning of ERISA, and thus any claims related to the plan are subject to ERISA preemption. Wolf's motion to remand will be denied.

**III**.

Having determined that this Court has jurisdiction over the action, Defendants' motion to dismiss will now be addressed. Defendants argue that all but Wolf's first claim for denial of benefits should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). A pleading fails to state a claim upon which relief may be granted under Rule 12(b)(6) if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S.

662, 678, (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert*, 517 F.3d at 439. The pleader need not have provided "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Furthermore, the legal effects of contractual clauses are questions of law that must be reviewed de novo. *Quality Products and Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 362, 369 (Mich. 2003). In essence, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, (quoting *Twombly*, 550 U.S. at 570).

**A.**

Defendants first move to dismiss Wolf's breach of fiduciary duty claim. Wolf alleges that she is entitled to bring a civil action against Causley under § 1132(a)(2) and that she is entitled to "other appropriate relief" under 1132(a)(3), including equitable relief and money damages. Compl. ¶¶ 43, 59.

Section 1132(a)(2) authorizes a plan beneficiary to bring a civil action for relief under § 1109. Section 1109 creates the following liability for persons who breach their fiduciary duties under ERISA:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109. The Supreme Court has interpreted these provisions to allow beneficiaries to bring derivative breach of fiduciary duty claims seeking recovery *on behalf of the plan*, stating that the principal concern of § 1109 is with "misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." *Massachusetts Mutual Life Insurance Company, et al., v. Russell*, 473 U.S. 134 (1985). Where the plan at issue is a defined contribution plan, a plaintiff satisfies this requirement where she alleges that she has suffered losses under her individual plan caused by fiduciary breaches. *See LaRue v. DeWolff, Boberg & Associates, Inc.,* 552 U.S. 248 (2008) (holding that in cases of defined contribution plans, "although § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account.") *See also Walker v. Federal Exp. Corp.*, 492 F. App'x. 559 (6th Cir. 2012) (concluding that the Supreme Court's holding in *La Rue* only applied to defined contribution plans pension plans).

In contrast, § 1132(a)(3) contains a fallback provision allowing a beneficiary to obtain any other equitable relief to redress violations of ERISA or to enforce any provisions of ERISA or the plan. 29 U.S.C. § 1132(a)(3). Relief under § 1132(a)(3) is available only where no other provision of § 1132 would provide the plaintiff with relief. *See Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 615 (6th Cir. 1998).

In her amended complaint, Wolf alleges that she suffered injury as a result of Causley's breach of his fiduciary duty to manage the plan funds in the interest of the plan and its participants and beneficiaries and his duty to refrain from self-dealing in the following ways: (1) awarding Wolf a lower level of death benefits in order to retain additional benefits for himself and his company; (2) commingling the funds of the plan with those of the company and

assigning the Death Benefits Plan's funding mechanism – Principal Life Insurance – to a bank as collateral for the company's debts; and (3) wrongfully diverting assets from the Death Benefit Plan by lowering or halting premium payments. Defendants do not dispute Wolf's allegation that Causley is a fiduciary of the plan, but argue that Wolf's allegations are not sufficient as a matter of law to state claims that Causley breached his fiduciary duties.[1]

**i.**

Wolf first claims that Causley breached his fiduciary duty to act in the interest of the plan in awarding lower benefits in order to retain benefits for himself and his company. "Under ERISA § 404, a fiduciary owes strict duties to a plan and its participants. Pursuant to this provision, a fiduciary must discharge his duties 'solely in the interest of the participants and beneficiaries and act with 'the care, skill, prudence, and diligence ... [of] a prudent man.'" *Pfahler v. National Latex Products Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (citing 29 U.S.C. § 1104(a)(1)(B)) (other internal quotations and citations omitted). A fiduciary that fails to meet these standards may be held personally liable to the plan for any resulting loss. *Id*. at 831.

Defendants argue that Wolf's claims concerning Causley's self-interest is not a breach of a fiduciary duty under § 1132(a)(3), but is instead simply a factor in reviewing his abuse of discretion in awarding benefits under § 1132(a)(1)(B). In their reply brief Defendants emphasize *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 428 (6th Cir. 2006) for the proposition that Wolf may not bring a breach of fiduciary duty claim under § 1132(a)(3) that relates to her claim for denial of benefits under § 1132(a)(1). Defendants are correct. *See Rochow v. Life Ins. Co. of North America*, 780 F.3d 364 (6th Cir. 2015). Because Wolf's claim that Causley acted in self-

---

[1] While elsewhere in the parties briefs there appears to be no dispute that the plan is a "top hat plan" intended to provide benefits for a select group of management or highly compensated employees, neither party addresses the applicability of ERISA's fiduciary duty provisions to the plan under 29 U.S.C. §§ 1101-1114 and § 1101(a)(1). Accordingly the Court will not reach this issue on its own, and the issue will be left for another day.

interest in underpaying her benefits relates to her claim to recover benefits under § 1132(a)(1), her § 1132(a)(3) claim that Causley acted in self interest in denying her benefits will be dismissed. Because Defendants make no argument that her § 1132(a)(2) claim should be dismissed, that claim will be allowed to proceed.

### ii.

Wolf next argues that Causley breached his fiduciary duty to manage the plan in the interests of the plan and its participants and beneficiaries by commingling plan funds with the general assets of the company and assigning the Principal Life Insurance to a creditor as collateral for the company's debts. Defendants argue that courts have consistently found that the general assets of a company are a sufficient source of funding for an ERISA plan. However, the cases proffered by Defendants, *Fort Halifax Packing Co. Inc., v. Coyne*, 482 U.S. 1, 17-18 (1987) and *Hughes v. White*, 467 F. Supp 2d 791, 801 (S.D. Ohio 2006) do not stand for the proposition that commingling assets cannot constitute a breach of a fiduciary duty on the part of the fiduciary. Instead, those cases merely hold that employers cannot escape the requirements of ERISA by commingling assets of the plan at issue with the company's general assets.

*LoPresti v. Terwilliiger*, 126 F.3d 34 (2d Cir. 1997) is more applicable. That case addressed a situation in which two brothers were the sole shareholders of a company that funded its employees' benefit and pension plans by deducting a sum from the paychecks of the employees, placing it in general assets, and then drawing funds from the general assets to finance the plans. *Id*. The Second Circuit held that one of the brothers was a fiduciary and could be subject to liability for breach of his fiduciary duties where he commingled plan assets with the Company's general account and exercised authority and control in determining whether to use those assets to pay company creditors instead of forwarding the assets to the plan fund. *Id*. at 40.

*See also Briscoe v. Fine*, 444 F.3d 478 (6th Cir. 2006) (citing *LoPresti* with approval). Wolf's claims in this regard will be allowed to proceed. [2]

### iii.

Wolf also alleges that Defendants breached their duty to manage the plan funds in the interest of the plan and its participants and beneficiaries by wrongfully diverting assets from the Death Benefit Plan by lowering or halting premium payments. A fiduciary has a duty to ensure that "a plan receives all funds to which it is entitled." *Pfahler,* 517 F.3d at 832-33 (internal quotations and citation omitted). However, ERISA does not create any substantive entitlement to any employer-provided benefits, nor does it "establish any minimum participation, vesting or funding requirements for welfare plans." *Id*. at 833.

Defendants argue this claim should be dismissed because Causley Trucking paid the premiums on the policy every year. Defendants also argue that they were not contractually bound to fund the Death Benefits Plan, which provides that Causley Trucking "may wish to purchase life insurance policies" to ensure that it had sufficient general assets to pay the death benefits. Plaintiff Wolf argues that Causley Trucking did not pay the premiums on the policies every year, and that Causley trucking obligated itself to fund the Death Benefits Plan by making the benefit amount contingent of the value of the life insurance policy.

The Death Benefits Plan states that Causley Trucking "may wish to purchase life insurance policies" in order to "assure that the Corporation will have sufficient assets to meet its obligation to pay the death benefits provided for under this Plan". The agreement that Causley Trucking entered into with Mr. Rieck states that upon his death Causley Trucking would pay his spouse "no less than the cash value of the policy in equal installments over 10 years". Thus

---

[2] Again, Defendants have raised no argument that the Court should undertake a different analysis because the Death Benefits Plan is a "top hat plan", and therefore the Court will not address that issue on its own.

- 14 -

while the plan itself did not obligate Causley Trucking to purchase or fund any policies, the agreement it entered into with Mr. Rieck obligated Causley Trucking to purchase a life insurance policy, the cash value of which Wolf was entitled to upon Mr. Rieck's death. However like in *Pfahler*, Wolf has made no argument that Causley Trucking was contractually bound to contribute specific amounts to the Plan. For this reason, Wolf's claim that Defendants breached their fiduciary duties by wrongfully diverting assets from the Death Benefit Plan by lowering or halting premium payments will be dismissed.

**B.**

Defendants next move to dismiss Wolf's claim for requested information from the plan administrator. Wolf argues that a plan administrator is required to comply with any reasonable request for information within 30 days of the request under 29 U.S.C. § 1132(c)(1). She argues that on October 23, 2014 she requested copies of relevant plan documents including the 1988 Non-Qualified Salary Continuation Plan, any resolutions terminating, freezing, or amending the 1988 plan, and all written communications regarding payment or nonpayment of premium on the Minnesota Life Policy or Principal Life Policy. She claims that on December 12, 2014, she again requested those documents, and also requested the latest summary plan description of the Death Benefits Plan, the latest form 5500, all other documents under which the Death Benefits Plan was established or operated, including the 1988 plan and related documents, all annual determinations of death benefits payable to her under the Death Benefit Only Plan, all annual statements of any life insurance policy used to fund Mr. Rieck's Death Benefit Plan, and all additional relevant information. Wolf argues that in both cases her requests were denied as irrelevant under 29 C.F.R. § 1560.503-1(m)(8). She therefore argues that she was wrongfully denied relevant plan documents that she was entitled to.

Defendants argue that because the Death Benefits Plan is an employee welfare benefits plan maintained by an employer primarily for the purpose of providing benefits for a select group of management or highly compensated employees, it is exempted from most reporting and disclosure provisions under 29 C.F.R. §§ 2520.104-24(a)(1) and 2520.104-24(b). Plaintiff Wolf does not dispute that the Death Benefit Plan is a qualifying "top hat" plan under these sections. Accordingly, under § 2520.104-24(c), the plan is exempt from disclosure requirements because it is both (1) maintained by an employer primarily for the purpose of providing benefits for a select group of management or highly compensated employees, and (2) the benefits (i) "are paid as needed solely from the general assets of the employer," and/or (ii) "are provided exclusively through insurance contracts or policies, the premiums for which are paid directly be the employer from its general assets, issued by an insurance company or similar organization which is qualified to do business in any State". *Id*.

Defendant concedes that it is still required to provide Wolf with requested documents that are "relevant" to her claim under 29 U.,S.C. § 1133 and 29 C.F. R. § 2560.503-1(h)(2). A document, record or information is" relevant" under 29 C.F.R. § 2560.503-1(m)(8) if it:

(i) Was relied upon in making the benefit determination; and
(ii) Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination; [or]
(iii) Demonstrates compliance with the administrative processes and safeguards…in making the benefit determination

*Id*.

Defendant correctly argues that the 1988 Plan is not relevant to Wolf's claims under the Death Benefits Plan. Wolf has raised no claim that she was denied benefits under the 1988 Plan, which is a separate plan from the Death Benefits Plan, and therefore her requests for documents in that regard are irrelevant to her claims that he was denied benefits under the Death Benefits

- 16 -

Plan. If Wolf believes she is entitled to benefits under the 1988 Plan, then that is a separate claim altogether, and one not raised in this action.

Documents related to plan payments, Death Benefit Plan summaries, and annual determinations are also irrelevant. Because, following Mr. Rieck's death, Wolf was entitled only to the cash value of the policy, the only documents that are relevant are those that Defendants relied on to determine the cash value of the policy or submitted, considered, or generated in the course of determining the cash value of the policy. 29 C.F.R. § 2560.503-1(m)(8). Wolf has made no allegation, nor presented any evidence, that any such documents were relied on in determining the cash value of the policy, or that they were submitted, considered, or generated in the course of determining the cash value of the policy. *Id.* Furthermore, the plan contained no administrative procedure or safeguard requiring the board to make an annual determination of the cash value of the policy.

Finally, Wolf's request for the latest form 5500 is irrelevant, since she has not alleged that the form 5500 was relied on in determining the cash value of the policy or that it was submitted, considered, or generated in the course of determining the cash value of the policy.

Because Wolf's document requests are all irrelevant under 29 C.F.R. § 2560.503-1(m)(8), her claim that she was wrongfully refused requested information will be dismissed.

**C.**

In her fourth claim, Wolf argues that ERISA common law permits her to bring a claim for equitable estoppel where there are ambiguous plan terms and representations made which constitute an oral interpretation of the ambiguity. As noted by Defendants, to state a claim for equitable estoppel Wolf must allege the following five elements: (1) conduct or language amounting to a representation of material fact; (2) the party to be estopped was aware of the true

facts; (3) the party to be estopped intended that the representation be acted on, or the party asserting estoppel reasonably believed that the party to be estopped intended the representation to be acted on; (4) the party asserting estoppel was unaware of the true facts; and (5) the party asserting estoppel reasonably or justifiably relied on the representation to her detriment. *Sprague v. General Motors Corp.*, 133 F.3d 388, 403 (6th Cir. 1998).

In her complaint, Plaintiff alleges that that Mr. Causley represented that she would receive certain amounts under the Death Benefits Plan and that she reasonably relied on his representations. Wolf has made no allegation that Defendant Causley intended her to act on his representations, or that she reasonably believed that Causley intended her to act on his representations. She also has not alleged that Causley was aware of the true facts. Defendants allege that these allegations are not sufficient to state a claim of estoppel. To the contrary, Wolf's claim satisfies the notice pleading requirement of Rule 8. *See In re AEP ERISA Litigation*, 327 F. Supp. 2d. 812, 821-22 (S.D. Ohio 2004). Wolf is not required to meet the heightened fraud pleading standard under Rule 9, nor is she required to make out a prima facie case of estoppel at this time. Because Wolf's pleadings place Defendants on notice of the estoppel claim against them, Defendants' motion to dismiss Wolf's estoppel claim will be denied.

### D.

Finally, Defendants move to dismiss Wolf's state law breach of contract and conversion claims. Defendants argue that the state law claims relate to the Death Benefits Plan and are therefore preempted. Wolf does not argue that her claims do not relate to the Death Benefits Plan. Instead, she reasserts her arguments from her motion to remand, arguing that the Death Benefits Plan is not an employee welfare or benefits plan under ERISA. Having already

determined that the Death Benefits is an ERISA plan, these arguments need not be addressed a second time. Because Wolf's breach of contract and conversion claims relate to the Death Benefits Plan and necessarily require an evaluation of the plan and the parties' performance pursuant to it, those claims are preempted. *See Cataldo v. U.S. Steel Corp.,* 676 F.3d 542, 557 (6th Cir. 2012). Defendants' motion to dismiss Wolf's breach of contract and conversion claims will be granted.

### IV.

Accordingly it is **ORDERED** that Plaintiff Frances Wolf's motion to remand, ECF No. 13, is **DENIED**.

It is further **ORDERED** that Defendants' motion to dismiss, ECF No. 11, is **GRANTED in part and DENIED in part**.

It is further **ORDERED** that Count II of Wolf's complaint, ECF No. 8, is **DISMISSED IN PART**. Wolf's claims that Defendant Causley breached his fiduciary duties by awarding lower benefits in order to retain benefits for himself and his company under § 1132(a)(3) and by wrongfully diverting assets from the Death Benefit Plan by lowering or halting premium payments are **DISMISSED**. Her claims that Defendant Causley breached his fiduciary duties by awarding lower benefits in order to retain benefits for himself and his company under § 1132(a)(2) and commingling plan assets with the general funds of the corporation **SURVIVE**.

It is further **ORDERED** that Count III, Count V, and Count VI of Wolf's complaint, ECF No. 8, are **DISMISSED** in their entirety.

                                                  s/Thomas L. Ludington  
                                                  THOMAS L. LUDINGTON  
                                                  United States District Judge

Dated: February 5, 2016

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 5, 2016.

                                     s/Michael A. Sian
                                     MICHAEL A. SIAN, Case Manager