UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

FRANCES M. WOLF,

     *Plaintiff*,                          CASE NO. 15-cv-12530

*v*.                                  DISTRICT JUDGE THOMAS LUDINGTON
                                         MAGISTRATE JUDGE PATRICIA MORRIS

CAUSLEY TRUCKING, INC.
and GREGORY CAUSLEY,

     *Defendants*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON CROSS MOTIONS FOR JUDGMENT (Docs. 39, 40)**

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Plaintiff's motion

for benefits (Doc. 39) be **DENIED**, that Defendants' motion for summary judgment (Doc.

40), be **GRANTED**, and that Plaintiff's amended complaint (Doc. 8) be **DISMISSED**.

## II.    REPORT

### A.    Introduction

The above captioned matter is an action under the civil enforcement provision of

the Employment Retirement Income Security Act ("ERISA"), 29 USC § 1132. Plaintiff,

Frances M. Wolf brings this action to recover death benefits pursuant to the death of her

husband, Randy Rieck ("Rieck"). Rieck was Vice President and Director of Maintenance

at Causley Trucking, Inc. ("Causley Trucking") a closely-held corporation wholly owned

by Rieck's uncle, Defendant Gregory Causley ("Causley") (collectively "Defendants").

(Doc 8 Ex. A at ¶¶ 1-3). On November 17, 2004, Causley Trucking purchased from Principal Life Insurance Company universal life insurance policies on the lives of certain employees including Rieck. (Doc. 33 at PGID 387). Causley Trucking was listed as the owner and beneficiary of the policy. (Doc. 11, Ex. 2, at PGID 223).

On November 30, 2004, the Board of Directors of Causley Trucking adopted a "Resolution Authorizing A Death Benefit Only Plan," which set forth the terms of the Death Benefit Only Plan ("Plan"). (Doc. 8 Ex. A). The Plan was created to "provide death benefits to the beneficiaries of [Causley Trucking's] eligible employees, if death occurs while the employee remains in the employment of [Causley Trucking] or has retired from employment after attaining age 65 with a minimum of 20 years of service." (*Id*. at ¶ 1). The Plan provides that the "Board of Directors shall determine which employees, hereafter referred to as 'Participants,' are eligible for the Plan and the amount of death benefits payable on the life of each Participant under the Plan." (*Id*. at ¶ 2). The Plan provides that Causley Trucking would enter into a DBO agreement with each participant. (*Id*.). The Plan further stated that Causley Trucking "may wish to purchase life insurance policies" to ensure sufficient assets to "meet its obligation to pay the death benefits provided for under this Plan." (*Id*. at ¶ 3). Causley Trucking was "designated as owner and beneficiary of any such policies purchased and all rights and benefits accruing from such policies shall belong solely to [Causley Trucking]. Participants shall have no rights or interest in such policies." (*Id*.). Causley, as president of Causley Trucking, would be the administrator and fiduciary of the Plan. (*Id*. at ¶ 4). Finally, the Plan provides that the "Plan's funding policy shall be that all the death benefits payable under the Plan shall be provided out of the general assets

of [Causley Trucking]. Such general assets shall include any insurance proceeds received by the Corporation at the death of a Participant." (*Id*. at ¶ 7).

Pursuant to the Plan, Causley Trucking entered into a DBO agreement with Rieck on November 30, 2004 ("RDBOA"). (Doc. 8 Ex. B). The RDBOA provides that Rieck, the "Participant," was entitled to "payments in the amount no less than the cash value of the policy in equal installments over 10 years to the Participant's spouse while living." (*Id*. at ¶ 1). Notably, the RDBOA does not define the meaning of the "policy" to which it refers. The RDBOA provides that "neither the Participant nor any beneficiary shall have any right" to assign or otherwise dispose of their interests or rights under the RDBOA." (*Id*. at ¶ 2).

Rieck died on August 7, 2014; Plaintiff was his beneficiary under the Plan and RDBOA. (Doc. 8 ¶ 9; Doc. 33, at PGID 391). Plaintiff's complaint alleges that one or two weeks prior to Rieck's death, Causley informed Plaintiff that she would receive $400,000 under the Plan. (Doc. 8 at ¶ 22). After Rieck's death, Causley advised Plaintiff that payment would be approximately $300,000, and later $350,000. (*Id*. at ¶¶ 23-24). Plaintiff alleges that Causley then arbitrarily reduced the death benefits amount to $206,405.39. (*Id*. at ¶ 25).

On February 5, 2016, District Judge Thomas Ludington entered an order granting in part and denying in part Defendants' motion to dismiss Plaintiff's six-count complaint. (Doc. 21). Counts I and IV survived in full, while count II survived insofar as she alleged that "Defendant Causley breached his fiduciary duties by awarding lower benefits in order to retain benefits for himself and his company under § 1132(a)(2) and commingling plan

3

assets with the general funds of the corporation." (*Id*. at 19). District Judge Ludington further determined that the Plan is governed by ERISA, and denied Plaintiff's motion to remand this case to state court. (*Id*. at 9). The undersigned then issued an order determining that the arbitrary and capricious standard of review applies. (Doc. 34 at 5).

### B.      ERISA Standards

Concerned about the "growth in size, scope, and numbers of employee benefit plans," Congress passed ERISA in 1974 to ensure uniformity and stability in this rapidly changing field and to protect the interests of participants and beneficiaries of these plans. 29 U.S.C. § 1001; *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). Among other things, ERISA regulates employee welfare benefit plans operated through insurance which provides payments in the event of disability. *See* 29 U.S.C. § 1002(1); *Am. Council of Life Insurers v. Ross*, 558 F.3d 600, 604 (6th Cir. 2009). Participants are employees or former employees who are or may become eligible to receive benefits under the plan. 29 U.S.C. § 1002(7). Beneficiaries, in turn, are persons "designated by a participant, or by the terms of an employee benefit plan, who [are] or may become entitled to a benefit thereunder." *Id.* § 1002(8).

At issue here is ERISA's civil enforcement provision, which allows plan beneficiaries to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Id.* § 1132(a)(1)(B). This "straightforward" provision lets beneficiaries bring suit for any benefits he believes have been wrongly withheld. *See Davila*, 542 U.S. at 210. ERISA does not, however, establish whether a beneficiary is entitled to disability benefits

4

- eligibility is determined by the plan. *See Cleveland v. Liberty Life Assur. Co. of Boston*, No. 06-137080, 2009 WL 649893, at *2 (E.D. Mich. Mar. 10, 2009) (adopting Report & Recommendation). Review of an administrator's decision to deny benefits must be considered solely on the basis of the administrative record before the administrator. *See Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 457 (6th Cir. 2003).

Claims for benefits must receive a "full and fair review" and participants are entitled to "specific reasons" for denial. 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1; *see also Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003); *Curry v. Eaton Corp.*, 400 F. App'x 51, 59 (6th Cir. 2010).

### C.     Analysis

#### i.     Plaintiff's "Brief to Reverse Administrator's Decision to Withhold Benefits"

Defendants argue that Plaintiff's "Brief to Reverse Administrator's Decision to Withold [sic] Benefits" is not a proper motion at all. (Doc. 42 at 20). Plaintiff's "brief" seeks relief as a motion would, but does not "state with particularity the grounds for seeking the order" as required by Federal Rule of Civil Procedure 7(b)(1)(B). However, Plaintiff clearly argues that Causley's decision was arbitrary and capricious. (Doc. 39 at 6, 10, 15). Defendants argue that Plaintiff "fails entirely to cite to Federal Rule of Civil Procedure 56 or the standard for summary judgment" and that Plaintiff "also fails to cite any authority whatsoever that it is proper for the Court to consider whether she is entitled to judgment as a matter of law on Count II under any other standard, theory, or procedure." (Doc. 42 at 20). By way of comparison, Defendants' motion cites Federal Rule of Civil Procedure

56(a), which provides that summary judgment is proper where a movant shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. (Doc. 40 at 18).

Insofar as the parties dispute that Causley's decision to deny benefits was incorrect, the arbitrary and capricious standard of review applies, as provided for in the Plan. (Doc. 34 at 5). In recent years, the Sixth Circuit has held that consideration of summary judgment in ERISA benefits claims involves determination of "whether there is any genuine issue of material fact as to whether the Plan Administrator's actions were arbitrary and capricious." *Farhner v. United Transp. Union Discipline Income Prot. Program*, 645 F.3d 338, 342 (6th Cir. 2011). *See also Thacker v. Schneider Elec. USA, Inc.*, 547 F. App'x 691, 693 (6th Cir. 2013) ("In an ERISA case, the relevant genuine issue of material fact is whether the administrator's decision was appropriate in light of the applicable standard of review."). This is somewhat unusual, as the Sixth Circuit has in prior years found that "the concept of summary judgment is inapposite to the adjudication of an ERISA action." *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998). This apparent contradiction has not been thoroughly explored in this district; judges in the Northern District of Ohio have resisted application of *Farhner* and *Thacker*, and have instead continued to apply the rule of *Wilkins*. *See Reed v. Int'l Painters*, No. 2:12-CV-72, 2015 WL 7450891, at *4 (S.D. Ohio Nov. 24, 2015) ("When presented with a motion for summary judgment in the ERISA context, the Sixth Circuit combines the arbitrary-and-capricious standard with the summary-judgment standard . . . . [T]his area of the law remains murky . . . ."); *Jones v. Allen*, No. 2:11-CV-380, 2013 WL 4455833, at *4 n.3

(S.D. Ohio Aug. 16, 2013) ("The decision in *Ferhner* [sic], however, did not consider the decision or reasoning in *Wilkins*, and relied on a line of cases that . . . predated *Wilkins*. Accordingly, the Court continues to follow the reasoning in *Wilkins* and declines to apply the summary judgment standard.").

It is unclear whether there is any meaningful distinction between determining if the Administrator's decision was "arbitrary and capricious" and "whether there is a question of material fact regarding whether the Administrator's decision was arbitrary and capricious." In any case the most recent Sixth Circuit pronouncement on the issue indicates that courts considering ERISA actions should determine whether there is "no genuine issue of material fact" regarding whether "the administrator's decision was appropriate in light of the applicable standard of review." *See Durbin v. Columbia Energy Grp. Pension Plan*, 522 F. App'x 341, 344 (6th Cir. 2013); *Farhner*, 645 F.3d at 343.[1] In this case, the applicable standard of review is arbitrary and capricious.

Insofar as Plaintiff raises equitable claims, *i.e.* that Causley violated his fiduciary responsibilities and that the doctrine of promissory estoppel should apply, those are "not claims for denial of benefits and are therefore addressed in the first instance in the district court, requiring no deference to any administrator's action or decision." *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 427 (6th Cir. 2006); *see* also *Stiso v. Int'l Steel Grp.*, 604 F.

---

[1] *See Edgar v. Disability Reinsurance Management Servs., Inc.*, 741 F. Supp. 2d 1268 (N.D. Ala. 2010) where the court calls for independent review of ERISA claims, noting that judicial appellate type review akin to that expressly provided for in the Social Security Act, 42 U.S.C. § 405(g) is never appropriate in ERISA cases because ERISA contains no such language. Instead, ERISA provides those challenging the decision of the plan administrator with the right to file a cause of action with trial de novo in federal court. The court also noted that if the review is akin to appellate judicial review, neither summary judgment nor a trial would be appropriately employed.

App'x 494, 498 (6th Cir. 2015) ("Therefore, equitable claims, such as breach of fiduciary duty, are addressed in the first instance in the district court under a normal standard of review, not the highly deferential standard of 'arbitrary and capricious' review."); *Bidwell v. Univ. Med. Ctr., Inc.*, 685 F.3d 613, 616 (6th Cir. 2012). Claims premised on breaches of fiduciary duty should thus be evaluated "using the de novo standard of review." *Stiso*, 604 F. App'x at 498; *Langley v. DaimlerChrysler Corp.*, 502 F.3d 475, 481 (6th Cir. 2007) ("Moreover, when benefits are paid solely from general assets, the protections of ERISA are not necessary. ERISA is intended to protect employees from abuses and mismanagement of private retirement and welfare funds controlled by employers or third parties . . . . Rather, employees face the same general risk with their disability payments as they do with their wages or salaries: the company might not have enough general assets to pay them.").

### ii.        The Issue of Remand Has Been Decided

Plaintiff moves for "revers[al of] the denial of proper benefits and/or remand the matter to state court." (Doc. 39 at 1). District Judge Ludington has determined that the Plan is governed by ERISA, and the undersigned has determined that the arbitrary and capricious standard of review applies to the decision of the Plan administrator. The parties agree that arbitrary and capricious standard applies (Docs. 40 at 13; 46 at 9). Yet Plaintiff seems to argue that ERISA is not applicable to the Plan, and renews her call for remand to state court. (Doc. 39 at 1, 22). This matter has already been decided, and thus foreclosed, by District Judge Ludington. (Doc. 19 at 19). Plaintiff does not move for reconsideration of the Court's order in her brief, and even if she had, her motion would be tardy by roughly

8

ten months. (*See* Local Rule 7.1(h) ("A motion for rehearing or reconsideration must be filed within 14 days after entry of the judgment or order."). Insofar as Plaintiff asserts that remand to state court is appropriate, she is not entitled to that relief.

### iii.       Count I – Denial of Benefits

In Count I, Plaintiff asserts that the terms of the Plan and RDBOA are ambiguous, that Causley reached his decision to pay benefits in the amount of $204.405.39 using an arbitrary and capricious method, and in so doing controverted the Plan's intended purpose. (Doc. 8 at 5-6). The RDBOA provides that Plaintiff would receive "no less than the cash value of the policy" upon Rieck's death, but fails to define which "policy" is at issue, and makes no other reference to any "policy." (Doc. 8 Ex. B ¶ 1). The Plan is the document to which the RDBOA refers, thus it is sensible to return to the Plan in attempting to ascertain the meaning of the term "policy." The Plan provides that Causley Trucking "may wish to purchase life insurance policies" to guarantee "sufficient assets to meet its obligation to pay the death benefits provided for under this Plan." (*Id*. Ex. A ¶ 3). Neither the Plan nor the RDBOA refers to any other "policy," and thus must refer to the insurance policy Causley Trucking took out on Rieck's life.[2] The parties do not dispute this inevitable conclusion.

---

[2] Per the Plan, Causley Trucking was permitted, but not obligated, to take out a life insurance policy on Rieck. However, if Causley Trucking failed to do so, the RDBOA's reference to the cash value of the "policy" would be dead letter, and the administrator would have no rational means by which to determine the amount of benefits to be paid. In this case, Causley Trucking did take out such a life insurance policy, and it does not appear that this poor draftsmanship has any impact on the meaning of the term "cash value" in this case.

The core of the dispute here is whether Causley was arbitrary and capricious in determining the amount of benefits to be paid in light of the "no less than the cash value of the policy" provision of the Plan. Both parties recognize that that phrase is not defined by the Plan itself, and that it is subject to interpretation. The Plan gives Causley "discretionary authority to determine eligibility for benefits and to construe the terms of the Plan." (Doc. 8 Ex. A at ID 119). Causley was thus empowered to define the phrase "no less than the cash value of the policy." Defendants argue that Causley gave the term "cash value" its usual meaning in permanent life insurance contracts, *i.e.* the amount of money which the holder of a permanent life insurance policy receives upon cancelling that policy. (Doc. 40 at 17-18).[3] Plaintiff cites no authority defining "cash value" in a manner she finds preferable, but instead suggests that it might mean the full face value of the policy, *i.e.* the amount Causley Trucking collected from the insurer upon Rieck's death (Doc. 39 at 19), and elsewhere asserts that the meaning of "cash value" is so indeterminate that it could mean "anywhere from the cash value to infinity" (*Id*. at 12).

As noted above, the parties agree that Causley told Plaintiff that she could expect to receive "approximately $400,000.00 upon her husband's passing," that Causley modified this amount, and in the end began making payments which will equal $204,405.39 over ten

---

[3] Defendants provide, as part of the administrative record, exhibits including communications between the parties' attorneys. (Doc. 36 Ex. 10). In one letter from Defendants' counsel to Plaintiff's counsel, Defendants' counsel cites definitions of "cash value" provided by various investment companies, all of which substantially conform to the definition of "cash value" Causley applied in this case. (*Id*. Ex. 10 at 18-19). While this communication was obviously not before Causley as he performed his role as Administrator of the Plan, Defendants argue that Causley relied upon the definitions reproduced in that communication, and thus this information is properly included in the administrative record. Plaintiff does not argue that these definitions should be excluded from the administrative record.

years. (Doc. 39 at 4-5). Because Causley vacillated between these amounts without any apparent justification, Plaintiff asserts that the decision to pay only $204.450.39 is necessarily arbitrary and unreasonable. (Doc. 39 at 13-17). In essence, Plaintiff requests application of a rule that, wherever an ERISA governed plan provides for administration of benefits of "at least X dollars," the administrator's decision is necessarily arbitrary and capricious, because there cannot be a reasoned explanation for choosing to grant X dollars, or X plus one dollar, or X plus one million dollars. Plaintiff cites no authority for this proposition, and the Court is not aware of any case law instructing that such open ended provisions result in necessarily arbitrary decisions. In any case, "[t]he Court's responsibility is not to evaluate whether the Plan itself is arbitrary, but to determine whether the administrator applied the terms of the Plan as written in a reasonable manner." *Ramagos v. W. & S. Life Ins. Co.*, No. CIV. A. 97-3605, 1999 WL 301699, at *5 (E.D. La. May 12, 1999). *See also Ames v. American Nat'l Can Co.*, 170 F.3d 751, 758 (7th Cir. 1999) ("[A]n employer is entitled to design a plan any way it likes, as long as it is willing to pay the cost (either directly or in terms of employee morale).")); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 91 (1983) ("ERISA does not mandate that employers provide any particular benefits, and does not itself proscribe discrimination in the provision of employee benefits."). The Court must merely decide whether Causley properly applied the terms of the Plan under the lens of the arbitrary and capricious standard.

The Plan required that Causley provide the Participant with "no less than the cash value of the policy in equal installments over 10 years to the Participant's spouse while living." (Doc. 8 Ex. B). The "net surrender value" of the life insurance policy held by

Causley Trucking on Rieck's life was $204,405.39, less a surrender charge of $24,706.46, resulting in a net value of $181,689.93. (Doc. 36 Ex. 6). Defendants have established that Causley relied upon various insurance industry definitions providing that "cash value" is synonymous with "net surrender value." (Doc. 42 at 12; Doc. 36 at 6). Plaintiff asserts that the term "cash value" is amenable to many interpretations, (Doc. 39 at 12), but she has not demonstrated that Causley's decision to treat "cash value" as meaning "net surrender value" of the policy was arbitrary and capricious. Causley was therefore obligated to provide only $181,689.93 to Plaintiff to meet the "no less than . . . cash value" provision of the Plan. Plaintiff is currently receiving payments which, over ten years, will equal $204,405.39, *i.e.* the amount of cash value due plus nearly $25,000.00 extra.

Plaintiff complains that $204,405.39 is not as much as Causley informed her she should expect to receive. Yet it is the amount which Causley reasonably found she was due. While Causley *could* have granted Plaintiff additional funds, his decision fully complied with the terms of the Plan. Once Causley paid Plaintiff this minimum amount, the distribution of any additional funds was strictly a matter of his discretion. That Causley incorrectly predicted that this sum would amount to $400,000 or $350,000 is of no consequence because any amount greater than or equal to the cash value of the insurance policy satisfied Plaintiff's rights under the Plan. Causley saw fit to give $24,706.46 more than what was due, resulting in a total payout of $204,405.39. Plaintiff is not legally entitled to more under the Plan and RDBOA.

Under Plaintiff's theory, the funds produced by the insurance policy on Rieck "should have been earmarked for the [DBO] Plan." (Doc. 46 at 14). She argues that

Causley's payment of insurance funds to Causley Trucking was a comingling of Plan funds and company funds, and was therefore a breach of his fiduciary duties. (Doc. 39 at 18-20). Yet review of the Plan and the RDBOA reveal that this interpretation is incorrect. Under the Plan, Causley Trucking was the beneficiary of any insurance policies purchased to help the company pay for employee death benefits. (Doc. 8 Ex. A). Beneficiaries of the Plan, *i.e.* survivors of deceased company employees, were entitled to only "payments in the amount of no less than the cash value of the policy." (*Id*. Ex. B).

Plaintiff has no right to any of the proceeds of the insurance policy, but instead merely has a claim to an amount equivalent to the cash value of the insurance policy, to be drawn from Causley Trucking's general coffers. *See* (Doc. 8 Ex. A ¶ 3 ("[Causley Trucking] shall be designated as owner and beneficiary of any such policies purchased and all rights and benefits accruing from such policies shall belong solely to [Causley Trucking]. Participants shall have no rights or interest in such policies.")).

Furthermore, nothing in the Plan or RDBOA *required* Causley to pay Plaintiff the face amount of the insurance policy (*i.e.* roughly one million dollars). If the intent of the Plan was to pay the survivors of deceased Causley Trucking employees the face value of the insurance policies taken out on those employees, the Plan and RDBOA could have been drafted to reflect this. Instead, they provide that an amount "not less than the cash value" of an insurance policy should be paid to the deceased employee's family. Causley was empowered to decide the meaning of this phrase, and he reasonably determined that Plaintiff should receive the cash value on the policy plus roughly $25,000.

13

Plaintiff's theory of how Plan assets ought to have been distributed is not supported by the language of the Plan itself. Plaintiff argues that the proceeds of any insurance policies purchased pursuant to the Plan should either be paid out as death benefits to persons like Plaintiff, or kept in a Plan trust, apparently to pay future Plan claimants. Yet the Plan clearly provides that "the Plan's funding policy shall be that all death benefits payable under the Plan shall be provided out of the general assets of [Causley Trucking]." (*Id.* Ex. A). Furthermore, as discussed below, the Plan in this case did not have a trust into which funds could be deposited.

Plaintiff argues that Causley's decision was tainted by conflict of interest, and should be found arbitrary for that reason as well. Plaintiff points to Causley's deposition testimony in which he admitted that Causley Trucking was not performing well financially, and that the bank kept a portion of the proceeds from Rieck's life insurance when they were paid to Causley Trucking to cover loans taken out by the corporation. (Doc. 39 at 13). Plaintiff further argues that "[e]very dollar in benefits that Greg Causley chose not to pay over to [Plaintiff], was an extra dollar in the hands of Causley Trucking, a company that is owned 100% by Mr. Causley." (*Id.* at 16). That Causley is owner of Causley Trucking, the entity which was obliged to pay benefits to Plaintiff, and was responsible for determining whether benefits must be paid, may be considered a conflict of interest. *See Brown v. Prudential Ins. Co. of Am.*, No. 09-11685, 2010 WL 2697124, at *2 (E.D. Mich. May 17, 2010) ("A conflict of interest exists for ERISA purposes where the plan administrator evaluates and pays benefits claims"), report and recommendation adopted, No. 09-11685, 2010 WL 2696975 (E.D. Mich. July 7, 2010). On the other hand, courts have found that

14

"it is not improper under ERISA for one person to act both as an officer of a company and as a plan administrator[,]" i.e., a fiduciary may wear two hats. *See Payonk v. HMW Indus., Inc.*, 883 F.2d 221, 225 (3rd Cir. 1989); *In re Wilmington Trust Corp. ERISA litig.*, 943 F. Supp. 2d 478, 492 (D. Del. 2013). Even if a conflict is found, however, that "does not alter the standard of review." *Peruzzi v. Summa Med. Plan*, 137 F.3d 431, 433 (6th Cir. 1998).

Even when viewed in light of Causley's conflict of interest, his decision to pay Plaintiff benefits in the amount of $204,405.39 is clearly supported by the language of the Plan and the RDBOA; that decision was not arbitrary and capricious. Plaintiff's argument that the Plan and RDBOA obligated Causley to pay her benefits in an amount more than the "cash value" of the insurance policy is not well supported.

### iv. Count II – Breach of Fiduciary Duty

Plaintiff's assertions regarding Causley's conflict of interest lead directly into her assertion that Causley violated his fiduciary duties under the Plan and the RDBOA.

Fiduciaries have three duties under ERISA:

> (1) the duty of loyalty, which requires "all decisions regarding an ERISA plan ... be made with an eye single to the interests of the participants and beneficiaries"; (2) the "prudent person fiduciary obligation," which requires a plan fiduciary to act with the "care, skill, prudence, and diligence of a prudent person acting under similar circumstances," and (3) the exclusive benefit rule, which requires a fiduciary to "act for the exclusive purpose of providing benefits to plan participants." *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 448–49 (6th Cir. 2002) (internal quotation marks omitted); *accord Dudenhoefer v. Fifth Third Bancorp*, 692 F.3d 410, 417 (6th Cir. 2012); see 29 U.S.C. § 1104(a)(1). Each of these duties serves the goal of ensuring that ERISA fiduciaries act "solely in the interest of [plan] participants and beneficiaries." 29 U.S.C. § 1104(a)(1); *see also James*, 305 F.3d at 449.

*Pipefitters Local 636 Ins. Fund v. Blue Cross & Blue Shield of Michigan*, 722 F.3d 861, 867–68 (6th Cir. 2013). Plaintiff asserts that Causley failed to act in exclusive interest of the participants and beneficiaries of the Plan, and instead took money for his own benefit. Plaintiff asserts that, because Causley is sole owner of Causley Trucking, "[e]very dollar that [he] decided not to pay to Mrs. Wolf under the Plan, was a dollar in his and his company's pocket." (Doc. 39 at 18). These claims do not concern Causley's administration of the Plan, but rather are equitable claims first addressed to this Court, and therefore Plaintiff's claims regarding promissory estoppel and Causley's breach of fiduciary duty must be considered *de novo. See Moore*, 458 F.3d at 427.

Plaintiff argues that Causley violated his fiduciary duties by failing to use all proceeds from the life insurance policy on Rieck to pay down creditors, "when the funds should have been retained and earmarked to fund the [DBO] Plan." (Doc. 39 at 19). She is aggrieved that "the proceeds of the life insurance went first to the company creditors, the company and only later to Plan participants and the beneficiaries." (Doc. 43 at 9). Plaintiff's claims under 29 U.S.C. § 1132(a)(3) have been dismissed. (Doc. 21 at 14-15). She can therefore only allege a violation of fiduciary duty which is separate and distinct from her claim for denial of benefits. This claim must arise under 29 U.S.C. § 1132(a)(2), and must be raised on behalf of the plan. *See Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n. 9 (1985); *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 608 (6th Cir. 2007) ("although an individual may bring a § 1109 claim via § 1132(a)(2), ERISA does not permit recovery by an individual who claims a breach of fiduciary duty.

Instead, § 1109 contemplates that breaches of fiduciary duty injure the plan, and, therefore, any recovery under such a theory must go to the plan.") (quotation omitted).

The trouble with Plaintiff's argument that Causley mismanaged Plan assets is that the Plan has no assets. The Plan provides that death benefits "shall be provided out of the general assets of the corporation." (Doc. 8 Ex. A at ¶ 3). These "general assets shall include any insurance proceeds received by the Corporation at the death of a Participant," and the Corporation is the "owner and the beneficiary of any such [insurance] policies purchased and all rights and benefits accruing from such policies shall belong solely to the Corporation. The Participant shall have no rights or interest in such policies." (*Id.*). Any monies to be paid pursuant to the Plan were drawn from the general coffers of Causley Trucking. It was wholly proper for Causley to deposit any monies received from the insurance policy on Rieck into the general coffers of Causley Trucking. Plaintiff's argument is premised on the false assumption that funds received from that insurance policy should have gone to her as beneficiary, and that any remaining funds should have gone into the Plan's trust. Yet the Plan itself has no assets and there is no Plan trust. Comingling of Plan assets cannot occur where all funds not paid to beneficiaries were due to Causley Trucking, because there are no Plan assets to comingle. In addition, there is nothing inherently wrong with an unfunded plan, i.e., one which does not have a separate trust of plan funds. No trust is needed if the plan is unfunded and plan benefits are paid solely from the employer's general fund. 29 C.F.R. §2550.403b-1.

Plaintiff therefore cannot establish that Causley violated his fiduciary duties as administrator of the Plan even when his actions are considered *de novo*. *Fenwick v. Merrill*

*Lynch*, 570 F. Supp. 2d 366, 374 (D. Conn. 2008)(dismissing breach of fiduciary duty claim where plaintiffs could not establish that the plan lost assets since payments were made from the general funds of the plan sponsor).

### v.   Count IV – Estoppel

Count IV of Plaintiff's amended complaint is premised on the doctrine of estoppel. (Doc. 8 at 10-11). This claim does not challenge Causley's actions as Plan administrator, but rather asserts equitable relief first addressed in this Court; the *de novo* standard therefore applies to Plaintiff's estoppel argument. *See Moore*, 458 F.3d at 427. Furthermore, because this claim is not premised on Causley's interpretation of the Plan, the Court may consider documents outside of the administrative record. *See Wilkins*, 150 F.3d at 619.

Plaintiff argues that "Mr. Causley, the plan administrator, told Mrs. Wolf a week or two prior to Mr. Rieck's death that the amount she would receive in the event of Mr. Rieck's death was around $400,000.00. He later made subsequent representations about the death benefit amount of $300,000.00, and later $350,000.00." (*Id.*). Plaintiff's amended complaint further provides that she "relied on Mr. Causley's representations about the death benefit amount she would receive after Mr. Rieck's death and it would be inequitable to allow Mr. Causley to pay a lesser amount of benefits to Mrs. Wolf." (*Id.*). The elements of an estoppel claim are:

> 1) conduct or language amounting to a representation of material fact; 2) awareness of the true facts by the party to be estopped; 3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended; 4) unawareness of

18

the true facts by the party asserting the estoppel; and 5) detrimental and justifiable reliance by the party asserting estoppel on the representation.

*Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436, 442 (6th Cir. 2010). "Principles of estoppel . . . cannot be applied to vary the terms of unambiguous plan documents; estoppel can only be invoked in the context of ambiguous plan provisions." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 404 (6th Cir. 1998). Estoppel can however be invoked "in the case of unambiguous pension plan provisions where the plaintiff can demonstrate the traditional elements of estoppel, including that the defendant engaged in intended deception or such gross negligence as to amount to constructive fraud, plus (1) a written representation; (2) plan provisions which, although unambiguous, did not allow for individual calculation of benefits; and (3) extraordinary circumstances in which the balance of equities strongly favors the application of estoppel." *Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436, 444 (6th Cir. 2010).

In this case, Plaintiff readily admits that "she, herself, did not rely to her detriment on statements made by Causley." (Doc. 43 at 16). Lack of reliance forecloses relief under any theory of estoppel. Rather than abandoning this fruitless argument, Plaintiff attempts to completely recharacterize her claim in her response to Defendants' motion for summary judgment. Therein, she asserts that caselaw requires "that the reliance be asserted *by the party asserting the estoppel* – which Mr. [sic] Wolf is doing on her husband's behalf as a beneficiary." (*Id.*). Plaintiff further asserts that she "is entitled to assert estoppel based on [Rieck's] reliance on the statements made to him by Greg Causley that the insurance proceeds would be significant as outlined in the [] Plan." (*Id.* at 16-17). This is a very

19

different claim from the one alleged in Plaintiff's complaint, and Plaintiff is not entitled to use a reply brief as an alternate means of amending her complaint. *See Notarnicola v. Johnson Controls Inc.*, No. 12-11331, 2014 WL 1304591, at \*5 (E.D. Mich. Mar. 28, 2014) ("A reply brief is a response to arguments made in the response brief; it does not provide the moving party with a new opportunity to present yet another issue for the court's consideration."). Even if the Court was to treat this claim as properly raised, Plaintiff's newfound allegations still fail to assert any reliance by either Plaintiff or Rieck, and thus still fail to set forth a viable claim for estoppel. While it was perhaps imprudent for Causley to provide estimates of Plan benefits which substantially exceeded the amount ultimately paid, Plaintiff cannot predicate an estoppel claim upon these predicted benefits because she did not rely upon them. Even if she had subjectively relied on them, Plaintiff has not even alleged that there was any intention on the part of the party to be estopped that the representation be acted on, nor has she asserted that there was any detrimental and justifiable reliance on her part. Plaintiff has not alleged that she behaved differently because of the estimations of benefits. Accordingly, she has failed to state a claim for promissory estoppel.

Somewhat relatedly, Plaintiff also attempts to raise new claims regarding parol evidence in her reply brief. Plaintiff therein asserts that "[Causley] and Mr. Reick [sic] allegedly had an understanding (outside the confines of the agreement), but which was not spelled out in the actual documentation." (Doc. 46 at 13). This appears to be an attempt to raise a new argument regarding parol evidence which could be used to alter the express terms of the Plan and the RDBOA. Plaintiff is not entitled to raise new claims in a reply

brief, much less an entirely new line of attack on the previously undisputed language of the Plan. *See Notarnicola*, No. 12-11331, 2014 WL 1304591, at *5. Perhaps most damningly, Plaintiff merely alludes to this supposed "understanding" without bothering to discuss the nature of the "understanding," when Rieck and Causley came to this "understanding," or how this "understanding" should alter the terms of the Plan. The Court should not further consider this undeveloped, untimely assertion.

D. **Conclusion**

**IT IS RECOMMENDED** that Plaintiff's motion for benefits (Doc. 39) be **DENIED**, that Defendants' motion for summary judgment (Doc. 40), be **GRANTED**, and that Plaintiff's amended complaint (Doc. 8) be **DISMISSED**.

## III. <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,

1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  March 23, 2017                           S/ PATRICIA T. MORRIS
                                                Patricia T. Morris
                                                United States Magistrate Judge


**<u>CERTIFICATION</u>**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: March 23, 2017                            By s/Kristen Castaneda
                                                Case Manager