UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

FRANCES M. WOLF,

               Plaintiff,                         Case No. 15-cv-12530

v.                                                      Honorable Thomas L. Ludington

CAUSLEY TRUCKING, INC.,
A Michigan Corporation, and
GREGORY CAUSLEY,

               Defendants.
_____/

## **ORDER DENYING DEFENDANT'S MOTION FOR ATTORNEY FEES AND COSTS**

       This matter involves an action under the civil enforcement provision of the Employment Retirement Income Security Act ("ERISA"), 29 USC § 1132. Plaintiff Frances M. Wolf brought this action to recover death benefits following the death of her husband, Randy Rieck ("Rieck"). Rieck was Vice President and Director of Maintenance at Defendant Causley Trucking, Inc. ("Causley Trucking") a closely-held corporation wholly owned by Rieck's uncle, Defendant Gregory Causley ("Causley") (collectively "Defendants"). After Mr. Rieck's death, Plaintiff applied for benefits under Causley Trucking's Death Benefit Only Plan (the "Plan"). Wolf was awarded $206,405.39.

       Unsatisfied with the benefits determination, Wolf filed an appeal with Causley, who upheld the determination. Wolf filed suit in the Saginaw County Circuit Court, which was removed by Defendants to this Court on July 16, 2015 on the grounds that Wolf's claims were preempted by ERISA. Wolf filed an amended complaint on August 13, 2015. On August 31, 2015, Defendants moved to dismiss all but the first count of Wolf's amended complaint for

denial of benefits under the plan. Wolf then moved to remand the action on September 17, 2015. On February 5, 2016, the Court denied Wolf's motion to remand, and granted Defendants' motion to dismiss in part. Plaintiff's denial of benefits claim (Count I) and her estoppel claim (Count IV) survived in their entirety, and her breach of fiduciary duty claim (Count II) survived in part. The matter was referred to Magistrate Judge Patricia T. Morris. The parties filed cross-motions for summary judgment on December 16, 2016.

On March 23, 2017, Judge Morris issued her report, recommending that Defendants' motion be granted and Plaintiff's motion be denied. Plaintiff timely filed objections. On May 23, 2017, the Court entered an order overruling Plaintiff's objections, adopting the report and recommendation, granting Defendants' motion for summary judgment, and denying Plaintiff's motion to vacate the administrative decision. On the same day, judgment was entered for Defendants and Plaintiff's complaint was dismissed. On June 21, 2017, Plaintiff filed a notice of appeal. Thereafter, Defendants filed the instant motion seeking $130,623 in attorney fees and $2,386.53 in costs. For the reasons that follow, the motion will be denied.

**I.**

On November 17, 2004, Causley Trucking purchased several universal life insurance policies from Principal Life Insurance Company on the lives of certain key employees including Rieck. (Doc. 33 at PGID 387). Causley Trucking was the owner and beneficiary of the policy and paid all premiums for the policy. (Doc. 11, Ex. 2, at PGID 223; Doc. 40 at PGID 723–24). On November 30, 2004, the Board of Directors of Causley Trucking adopted a "Resolution Authorizing A Death Benefit Only Plan," which set forth the terms of the Death Benefit Only Plan ("Plan"). (Doc. 8 Ex. A). The Plan was created to "provide death benefits to the beneficiaries of [Causley Trucking's] eligible employees, if death occurs while the employee

remains in the employment of [Causley Trucking] or has retired from employment after attaining age 65 with a minimum of 20 years of service." (Id. at ¶ 1). The Plan provides that the "Board of Directors shall determine which employees, hereafter referred to as 'Participants,' are eligible for the Plan and the amount of death benefits payable on the life of each Participant under the Plan." (Id. at ¶ 2).

The Plan provides that Causley Trucking would enter into a DBO agreement with each participant. (Id.). The Plan further stated that Causley Trucking "may wish to purchase life insurance policies" to ensure sufficient assets to "meet its obligation to pay the death benefits provided for under this Plan." (Id. at ¶ 3). These "key man" insurance policies were also intended to ensure the company would have sufficient assets available to replace the deceased employee's value to the company and carry on until it could find a suitable replacement employee. (Doc. 40 at PGID 725–26). Causley Trucking was "designated as owner and beneficiary of any such policies purchased and all rights and benefits accruing from such policies shall belong solely to [Causley Trucking]. Participants shall have no rights or interest in such policies." (Id.). Causley, as president of Causley Trucking, would be the administrator and fiduciary of the Plan. (Id. at ¶ 4). Finally, the Plan provides that the "Plan's funding policy shall be that all the death benefits payable under the Plan shall be provided out of the general assets of [Causley Trucking]. Such general assets shall include any insurance proceeds received by the Corporation at the death of a Participant." (Id. at ¶ 7).

Pursuant to the Plan, Causley Trucking entered into a DBO agreement with Rieck on November 30, 2004 ("RDBOA"). (Doc. 8 Ex. B). The RDBOA provides that Rieck, the "Participant," was entitled to "payments in the amount *no less than the cash value* of the policy

in equal installments over 10 years to the Participant's spouse while living." (Id. at ¶ 1) (emphasis added). Notably, the RDBOA does not define "cash value."

According to the Summary of Policy Values provided by Principal Life, the policy had a fixed face value of $1,059,496, representing the amount payable to Causley Trucking at Rieck's death. (Doc. 40 at PGID 724; Doc. 36 Ex. 6 at PGID 499–502). As set forth in Principal Life's Summary of Policy Values, the surrender value of the policy at Rieck's death was $206,405, less a "surrender charge" of $24,706, yielding a "net surrender value" of $181,699. Doc. 36 Ex. 6 at 499–502. Rieck passed away on August 7, 2014; Plaintiff was his beneficiary under the Plan and RDBOA. (Doc. 8 ¶ 9; Doc. 33, at PGID 391). Although "cash value" was undefined in the RDBOA, Plan Administrator Causley determined by reference to industry usage that "cash value" referred to the net surrender value of the policy, or the value of the policy if cancelled prior Rieck's death, and not to the fixed face value of the policy. *Id.*

Plaintiff's complaint alleged that one or two weeks prior to Rieck's death, Causley informed Plaintiff that she would receive $400,000 under the Plan. (Doc. 8 at ¶ 22). After Rieck's death, Causley advised Plaintiff that payment would be approximately $300,000, and later $350,000. (Id. at ¶¶ 23-24). Plaintiff alleged that Causley then arbitrarily reduced the death benefits amount to $206,405.39. (Id. at ¶ 25). Defendants contend that Plaintiff misunderstood Causley's statements, as he was not intending to represent to Plaintiff that she would receive more than cash value of the policy. Rather, Causley intended to convey to Plaintiff that the $400,000 comprised the death benefit under the RDBOA of roughly $200,000, *in addition* to $25,000 from a separate life insurance policy the company provided to Rieck, and $175,000 from a separate life insurance policy Rieck purchased for himself through his company retirement plan account. (*See* Doc. 40 at PGID 727).

**II.**

Defendants argue that they should be awarded fees and costs as the *King* factors weigh in favor of such an award. *Sec'y of Dep't of Labor v. King,* 775 F.2d 666, 669 (6th Cir. 1985). Specifically, Defendants argue that Plaintiff maintained claims lacking any basis in law or fact, took unsupportable legal positions, and took other vexatious action such as prematurely appealing the Court's denial of remand, and repeatedly litigating the issue of remand without filing a procedurally proper motion. Mot. at 2–3, ECF No. 54. Defendants also argue that Plaintiff is financially capable of satisfying the award of fees and costs, and that entering such an award in this case would deter similarly situated Plaintiffs from filing baseless claims. *Id.* at 11.

Plaintiff contends that the *King* factors militate against an award in this case. Specifically, she argues that she pursued this action in good faith, with an honest belief that she was entitled to additional benefits under the RDBOA. Resp. at 3, ECF No. 56. Plaintiff argues she believed she was entitled to additional benefits because the language of the RDBOA was unclear, and because Mr. Causley made three different representations to her regarding the money she would receive under the plan. *Id.* at 3–4. Plaintiff also contends that she is not financially capable of financing a fee award, that a fee award would have a chilling effect on ERISA beneficiaries' ability to protect their rights, and that her arguments in this case had merit. Resp. at 5–9, ECF No. 56.

The parties also contest the reasonableness of fees requested in this case, including the hours worked and rates charged by defense counsel. As the Court finds a fee award is not warranted, the Court will not address the reasonableness of the fees requested.

**III.**

Pursuant to 29 U.S.C § 1132(g), "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." The party seeking fees need not be a

"'prevailing party' to be eligible for an attorney's fees award." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252 (2010). Rather, they must simply achieve "some success on the merits." *Id.* at 256. "The punishment of bad faith litigants is a legitimate purpose under ERISA, but not the only purpose." *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1304 (6th Cir. 1991). When determining whether to award fees, courts consider the following five factors:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Sec'y of Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985). "These factors are not statutory and typically not dispositive. Rather, they are considerations representing a flexible approach." *Moon v. Unum Provident Corp.*, 461 F.3d 639, 643 (6th Cir. 2006).

## IV.

Defendants clearly achieved success on the merits, as the Court dismissed some claims at the motion to dismiss stage and granted summary judgment for Defendants with respect to all other claims.

### A.

The first factor set forth in *King* is the degree of the opposing party's culpability or bad faith. *King*, 775 F.2d 666. Defendants assert that Plaintiff's claims lacked merit and therefore infer that "Plaintiff filed this lawsuit for what Defendants can only assume were vindictive reasons." Mot. at 10, 12. First and foremost, "the mere fact that an action is without merit does not amount to bad faith." *BDT Prod., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 753 (6th Cir. 2010). There is no evidence here that Plaintiff acted for any improper purpose. To the contrary,

the record suggests that she acted with a good faith belief that she was entitled to additional benefits.

Defendants do not dispute that Mr. Causley made varying representations to Plaintiff regarding the amount of benefits she would receive. Mot. at 6, ECF No. 54; Mot. Summ. J. at 20, ECF No. 40. He represented that she would receive $400,000, $350,000, and $300,000, before ultimately awarding $206,405.39. *Id.* Furthermore, the language of the RDBOA is less than specific from a beneficiary's perspective. The RDBOA describes the beneficiary's entitlement as "no less than the cash value of the policy," without defining cash value or indicating what policy it refers to. *Id.* at 4. The varying representations by Mr. Causley and the language of the RDBOA left Plaintiff unclear as to what her legal entitlement was. Accordingly, this factor militates against awarding fees or costs.

**B.**

The second factor to consider is the non-movants ability to pay an award of fees and costs. *King*, 775 F.2d 666. Defendants cite to Plaintiff's deposition transcript which reveals somewhat inconclusive information about money she has received, or will receive, from a separate life insurance policy and 401k. Mot. at 11. At best, the deposition testimony provides a very rough estimate of the assets forthcoming to Plaintiff following her husband's death. Assuming Plaintiff has indeed received roughly $600,000 in assets since her husband's death, a variety of factors could impact her ability to pay a fee award, including the tax consequences of the assets she received and her financial obligations.

Defendants note that they are still holding a $144,000 installment fund to be paid out to Plaintiff over seven years, and that any fee award entered against her could be offset against that installment fund. Although that may be true, it does not address her financial circumstances or

her dependence on the installment fund. To the extent Plaintiff is reliant on her installment payments as a form of income, ceasing or reducing these installment payments is no different that asking her to pay a fee award out of her current assets.

Defendants have not furnished sufficient information to assess Plaintiff's ability to pay a fee award. Accordingly, this factor weighs neither for nor against a fee award.

**C.**

The third factor to consider is the deterrent effect of an award on other persons under similar circumstances. *King*, 775 F.2d 666. Defendants do not offer much analysis with respect to this factor other than the assertion that an award of fees will "dissuade others from filing similar baseless claims." Mot. at 11. However, the sixth circuit has noted that "fee awards are likely to have the greatest deterrent effect where deliberate misconduct is in the offing." *Foltice v. Guardsman Prod., Inc.*, 98 F.3d 933, 937 (6th Cir. 1996). Defendants have furnished no evidence of deliberate misconduct here. Accordingly, this factor does not weigh in favor of a fee award.

**D.**

The fourth factor is whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA. *King*, 775 F.2d 666. The parties agree that this factor is not applicable here. Mot. at 12; Resp. at 8.

**E.**

The final factor to consider is the relative merit of the parties' positions. *King*, 775 F.2d 666. Defendants clearly succeeded in defending their case on the merits. However, the fact that a party prevails does not necessarily weigh in favor of awarding that party attorney fees. *Shelby*

*Cty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 378 (6th Cir. 2009). This is particularly true where a party's position "appears no more devoid of merit than that of any other losing litigant." *Id*. Plaintiffs' claims and legal theories were ultimately rejected. However, her claims were not entirely meritless. The claims she asserted stemmed in large part from the language of the RDBOA that failed to provide the beneficiary with specific guidance on the amount of the death benefit. Another source of confusion was the miscommunication between Causley and Plaintiff regarding the amount of money she would receive.

**i.**

Plaintiff's arguments in her motion to remand were not meritless. Plaintiff moved to remand on the basis that her claims relating to the plan were not subject to ERISA preemption, as the plan was not an ERISA plan in light of the factors articulated in *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir. 1982) (en banc). Specifically, Plaintiff argued that under the first *Dillingham* factor, a reasonable person could not ascertain the intended benefits of the plan, which the plan defined as "no less than the cash value of the policy," without defining "cash value" or specifying the "policy" to which it referred. Order at 6–9, ECF No. 21. The Court engaged in a nearly four page analysis, distinguishing numerous cases and arriving at the conclusion that the description of the benefits in the plan was not "ephemeral, contingent, or wholly discretionary." *Id.* Plaintiff's theory was ultimately incorrect, but not meritless.

**ii.**

Plaintiff's fiduciary duty claims under 1132(a)(3) were dismissed, but her claims under 1132(a)(2) survived the motion to dismiss and were only defeated on Defendants' motion for summary judgment. The breach of fiduciary duty claim failed because it was premised on a theory that the administrator mismanaged Plan assets when in fact the Plan itself had no assets,

but was rather funded through the corporation's general assets. Rep. & Rec. at 17, ECF No. 47. The Plan provided that the corporation may choose to purchase life insurance policies to fund the Plan, but that such policies and all rights and benefits accruing thereunder were assets of the corporation, and not the beneficiary. *Id.* The beneficiary had no interest in any life insurance policy purchased by the company. Rather, the beneficiary only had a right under the Plan to death benefits, and the amount of said death benefits was to be measured with reference to the policy (an amount "no less than the cash value of the policy"). Because the policy was an asset belonging entirely to the corporation, the plan administrator did not breach his duties as a fiduciary of the Plan by encumbering the policy as collateral for a bank loan and "comingling" proceeds from the policy with other company assets.

Thus, determining the viability of the fiduciary duty claim involved a rather subtle parsing of the language and operation of the Plan. The conclusion that the Plan itself had no assets for the fiduciary to manage was not clear on a fair reading of the whole document. The Plan contained a provision purporting to give the company an option whether to purchase a policy to fund the plan. However, that provision was at odds with the language of the RDBOA.[1] Although the fiduciary duty claim ultimately failed, it was not so meritless as to warrant a fee award.

---

[1] As explained in the Report and Recommendation, "Per the Plan, Causley Trucking was permitted, but not obligated, to take out a life insurance policy on Rieck. However, if Causley Trucking failed to do so, the RDBOA's reference to the cash value of the "policy" would be dead letter, and the administrator would have no rational means by which to determine the amount of benefits to be paid. In this case, Causley Trucking did take out such a life insurance policy, and it does not appear that this poor draftsmanship has any impact on the meaning of the term "cash value" in this case."

**iii.**

Plaintiff's claim for failure to provide requested information was dismissed. The Court found that Defendants were exempt from most ERISA reporting and disclosure requirements under 29 C.F.R. §§ 2520.104-24(a)(1) and 2520.104-24(b), because the Plan was a qualifying "top hat" plan under § 2520.104-24(c) because it was:

> (1) maintained by an employer primarily for the purpose of providing benefits for a select group of management or highly compensated employees, and (2) the benefits (i) "are paid as needed solely from the general assets of the employer," and/or (ii) "are provided exclusively through insurance contracts or policies, the premiums for which are paid directly be the employer from its general assets, issued by an insurance company or similar organization which is qualified to do business in any State.

Order at 15–17, ECF No. 21. Defendants were still obligated to provide Plaintiff with documents relevant to her claims. *Id.* The Court found that they did so, and that some of the documents requested by Plaintiff were not relevant to her claims. *Id.* In sum, Plaintiff's claim for requested information was dismissed based on a relatively narrow exception for qualifying "top-hat" plans, and because the Court disagreed with Plaintiff regarding what documents were relevant to her claim. Thus, Plaintiff's claim for information disclosure was not so meritless as to warrant a fee award.

**iv.**

Plaintiff's state law breach of contract and conversion claims were dismissed based on ERISA preemption. The Court found that "because Wolf's breach of contract and conversion claims relate to the Death Benefits Plan and necessarily require an evaluation of the plan and the parties' performance pursuant to it, those claims are preempted." *Id.* at 19. As discussed above at section IV. E. i., Plaintiff argued that the Plan was not an ERISA plan under *Dillingham*. 688

F.2d 1367. For the same reasons discussed above, that argument was not so meritless as to warrant a fee award.

v.

Plaintiff's claim for wrongful denial of benefits was not challenged in the motion to dismiss but was ultimately defeated by Defendants' motion for summary judgment. Plaintiff contended that the plan administrator, Mr. Causley, acted arbitrarily and capriciously in reaching his benefits decision. The RDBOA entitled plaintiff to "no less than the cash value of the policy." Rep. & Rec. at 9. Both parties recognized that this phrase is subject to interpretation. *Id.* at 10. The Plan granted the administrator the authority to interpret the terms of the Plan. *Id.* Defendant provided authority stating that, in the life insurance context, "cash value" usually refers to surrender value of the policy. *Id.* at 10. Plaintiff did not provide authority to challenge this interpretation.

The Court found that the administrator did not act arbitrarily or capriciously in applying the terms of the policy and determining that Plaintiff ought to receive only the surrender value of the policy. *Id.* The plan administrator had the discretion to award more than the cash value of the policy, but was only required to award an amount "no less than the cash value of the policy." *Id.* at 11. Notably, the net surrender value of the policy was only $181,699, as Principal Life deducted a "surrender charge" of $24,706, but the administrator chose not to impose that surrender charge on Plaintiff. The representations made by the plan administrator to Plaintiff that he would award more than $206,405.39 may have been imprudent and premature, but these representations did not alter his obligations under the policy. He fully complied with those obligations. *Id.*

In short, it was not unreasonable for Plaintiff to believe she received an arbitrary benefits decision. However, if such a decision was in fact arbitrary, it was because of the structure and language used in the Plan, not any improper action by the administrator. As explained by Judge Morris: "the Court's responsibility is not to evaluate whether the plan itself is arbitrary, but to determine whether the administrator applied the terms of the Plan as written in a reasonable manner." Rep. & Rec. at 11 (citing *Ramagos v. W. & S. Life Ins. Co.*, 1999 WL 301699, at *5 (E.D. La. May 12, 1999)). Nevertheless, Plaintiff's claim for denial of benefits was not so meritless as to warrant a fee award.

### vi.

Plaintiff's estoppel claim was defeated at summary judgment. Plaintiff contended that Mr. Causley, the plan administrator, was estopped from denying her the benefits he represented she would receive. In the amended complaint, Plaintiff asserted that she "relied on Mr. Causley's representations." Am. Compl. at 11, ECF No. 8. However, in her brief in response to the motion for summary judgment, Plaintiff readily admitted that she did not rely on his representations. Resp. at 16, ECF No. 43. Rather, she reframed her estoppel claim and attempted to assert that her husband relied on Mr. Causley's representation that "the insurance proceeds would be significant." *Id.* Plaintiff's estoppel claim clearly lacked merit. However, on the whole, the fifth factor outlined in *King* does not weigh in favor of awarding fees. *King*, 775 F.2d 666.

### V.

Having considered the factors set forth in *King* in light of the entire record, the claims and defenses asserted, the disposition of the case, and the conduct of Plaintiff, the Court finds that a fee award is not warranted.

Accordingly, it is **ORDERED** that Defendant's Motion for Attorney Fees and Costs, ECF No. 54, is **DENIED**.

                                                s/Thomas L. Ludington
                                                THOMAS L. LUDINGTON
                                                United States District Judge

Dated: November 13, 2017

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 13, 2017.

                              s/Kelly Winslow
                              KELLY WINSLOW, Case Manager